UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                )
ALLISON MAYER,                  )
                                )
        Plaintiff,              )
                                )
        v.                      )   C.A. No. 15-462 S
                                )
PROFESSIONAL AMBULANCE, LLC;    )
JOSEPH BAGINSKI, in his individual )
and professional capacity;      )
BRENDA BAGINSKI, in her individual )
and professional capacity;      )
MARTIN BAGINSKI, in his individual )
and professional capacity; and  )
JACQUELYN BAGINSKI, in her      )
individual and professional     )
capacity,                       )
                                )
        Defendants.             )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

        Before the Court is Defendants' Motion to Dismiss.  (ECF No.

14.)  Plaintiff filed an Opposition (ECF No. 16), and Defendants

filed a Reply (ECF No. 17).[1]  For the reasons that follow,

Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN

PART.

_____

        [1]  Plaintiff subsequently filed a Motion for Leave to File
Third Amended Complaint to add counts under the Rhode Island Fair
Employment Practices Act ("FEPA"), R.I. Gen 1956 § 28-5-1 et seq.
(ECF No. 22), which the Court granted.  (07/14/2016 Text Order.)
As the Court stated in its Text Order, it considers the arguments
set forth in Defendants' Motion to Dismiss with respect to
Plaintiff's entire Third Amended Complaint.  (Id.)

I.   Background

Plaintiff, Allison Mayer, is suing her former employer, Professional Ambulance, LLC, and its alleged principals, four members of the Baginski family, for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(r) (the provision covering breaks to express breast milk) and § 215(a)(3) (the provision covering retaliation); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 et seq.; and the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen 1956 § 28-5-1 et seq.  Specifically, Plaintiff alleges that Defendants failed to provide her with reasonable break time and an appropriate place to express breast milk, and that they fired her in retaliation for her requests and complaints concerning this issue.

The facts – as alleged by Plaintiff – are as follows.[2]  On February 11, 2015, Plaintiff interviewed for an EMT position with Professional Ambulance, LLC.  (Third Am. Compl. ¶ 20, ECF No. 25.) At the interview, Defendant Brenda Baginski ("Brenda") seemed impressed with Plaintiff's prior experience as an EMT and pleased that Plaintiff requested the night shift, which tends to be harder

---

[2]   As this is a motion to dismiss, all facts alleged by the Plaintiff are taken to be true.  See Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).

to staff.   (Id. ¶¶ 23-24.)   After meeting briefly with Defendant Joseph Baginski ("Joseph"), Plaintiff was offered an EMT position that would pay $14.00 per hour, and was told she would work 36 hours a week with three 12-hour overnight shifts.  (Id. ¶¶ 27-28.) Plaintiff was scheduled to work the night shift on February 13 and February 14, 2015.  (Id. ¶ 30.)  She was told that Martin Baginski ("Martin") would finalize her ongoing schedule, and she was given her uniform.  (Id. ¶¶ 31-32.)  Plaintiff then informed Brenda that she was still breastfeeding and that she would need to express breast milk on breaks, but that she had done so at her prior ambulance position without any incident.  (Id. ¶ 33.)  Brenda's "tone immediately changed" and she "coldly" told Plaintiff that she could express milk in the bathroom.  (Id. ¶ 34.)  Plaintiff stated that an unsanitary bathroom was unsuitable.  (Id. ¶ 35.) Brenda did not seem pleased and then left the room to speak to Joseph.  (Id.)  After a "long delay and an awkward return," Brenda stated that the only location available was Joseph's office, which Plaintiff describes as having "an interior window looking out on [the] work area with only a flimsy window covering."  (Id. ¶¶ 36-37.)  According to Plaintiff, there was a "palpable change in [Brenda]'s tone and behavior after [Brenda] spoke to [Joseph] regarding Plaintiff's need to take lactation breaks in a suitable location."  (Id. ¶ 38.)  Because Plaintiff was "[f]earful that [Brenda] would change her mind about hiring Plaintiff due to her

sudden tone change, Plaintiff agreed to try the office location to express milk." (Id. ¶ 39.)

Prior to her first night of work, Plaintiff attempted to obtain her ongoing schedule, which she had been promised, so that she could set up child care. (Id. ¶¶ 31, 42.) She was told that "maybe" it would be provided to her the following day. (Id. ¶ 42.) Plaintiff arrived for her first night of work on February 13, and she was still unable to obtain her schedule. (Id. ¶ 43.) According to Plaintiff, the environment was "sexist," "women EMTs were . . . degraded as compared to men," and Joseph "did not accept [] women EMTs as equals because females were not as 'strong.'" (Id. ¶¶ 44-46.) Plaintiff further states that she was made to feel uncomfortable about taking lactation breaks. (Id. ¶ 45.) When she did attempt to express milk in Joseph's office, she "was horrified to see that the sizable interior window had only a flimsy blind, the room was not secure, and the walls were thin so male workers could hear her pumping." (Id. ¶ 47.) She specifically heard men making comments about her pumping through the wall, and thought she heard one of them say "tits" or "boobs." (Id. ¶¶ 50, 52.)

Plaintiff made several more requests to get her schedule, but never received it. (Id. ¶ 54.) Plaintiff also "took it upon herself to attain the necessary training," which Defendants had failed to schedule for her. (Id. ¶ 56.) During the training,

4

Plaintiff expressed a need to take a break for lactation and complained to her shift supervisor, the Dispatcher, about "the lack of a private, secure, sanitary room." (Id. ¶¶ 57, 59.) She indicated that Brenda and Joseph had claimed that no other rooms were available. (Id. ¶ 60.) In response, the Dispatcher informed Plaintiff about a conference room. (Id.) However, the conference room, which was locked, had no heat and therefore "expressing milk was too physically painful." (Id. ¶¶ 61-62.) Plaintiff did not "express milk again that night because no suitable location existed" and "because she was made to feel uncomfortable about the lactation breaks in the work environment . . . ." (Id. ¶¶ 62-63.) Later that night, Plaintiff found out she was not on the upcoming week's schedule. (Id. ¶ 64.) She called Martin who said she could work that Tuesday. (Id. ¶ 66.)

On Monday, February 16, Plaintiff was called by Jacquelyn Baginski ("Jacquelyn") who said she was terminated because there were "'multiple complaints' from other employees about Plaintiff being 'rude and abrasive.'" (Id. ¶¶ 68-69.) According to Plaintiff, she asked Jacquelyn, "may I ask what was said because this has never happened before?" to which Jacquelyn responded, "no you may not!" (Id. ¶¶ 72-73.) Plaintiff then went to meet with Brenda, who gave her a check for the hours she had worked from the business bank account (not a payroll check). (Id. ¶¶ 74, 75.) Brenda said the decision to let Plaintiff go had been unanimous.

(Id. ¶ 76.)  Brenda also said that Plaintiff could call her for
further explanation, but then Brenda did not return Plaintiff's
call.  (Id. ¶¶ 79-81.)

Plaintiff was allegedly replaced by a male with fewer
qualifications.  (Id. ¶ 83.)  Plaintiff alleges she was unable to
produce breast milk after this incident due to the two shifts where
she was unable to pump as frequently as she needed to.  (Id. ¶
96.)  As a result, she had to switch her child to formula, which
caused medical problems.  (Id.)  She also claims emotional
distress.  (Id.)

## II.  Discussion

### A.   29 U.S.C. § 207(r) (FLSA provision covering breaks to express breast milk)

Section 207(r) of the FLSA requires that employers provide:

(A) a reasonable break time for an employee to express
breast milk for her nursing child for 1 year after the
child's birth each time such employee has need to express
the milk; and

(B) a place, other than a bathroom, that is shielded
from view and free from intrusion from coworkers and the
public, which may be used by an employee to express
breast milk.

29 U.S.C. § 207(r)(1).  An employer is not "required to compensate
an employee receiving such reasonable break time [to express breast
milk] for any work time spent for such purpose."  Id. § 207(r)(2).
Moreover, the FLSA limits liability for violations of Section
207(r) to "unpaid minimum wages."  See id. § 216(b).

The Department of Labor ("DOL") has explained that "[b]ecause employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."  Reasonable Break Time for Nursing Mothers, 75 FR 80073-01 (December 21, 2010); see also Hicks v. City of Tuscaloosa, No. 7:13-CV-02063-TMP, 2015 WL 6123209, at *28 (N.D. Ala. Oct. 19, 2015) ("The toothlessness of § 207(r)(1) was acknowledged by the Department of Labor in its Notice regarding § 207(r)(1).").  Courts examining this issue have likewise held that there is no cause of action under Section 207(r) absent a claim for unpaid minimum wages or overtime.  See, e.g., Hicks, 2015 WL 6123209, at *28.  Indeed, Plaintiff concedes that "the courts have sadly acknowledged that in most cases, even if a violation is found, . . . there is no remedy unless the Plaintiff alleges unpaid minimum wages as a proximate result of the violation." (Pl.'s Opp'n 8, ECF No. 16-1 (emphasis in original).) She instead argues that courts have been wrong:

> [A] sole private remedy of unpaid minimum wage and overtime for violation of § 207(r) do not make sense given that § 207(r) expressly states that lactation breaks do not require compensation. . . . Thus, the law as presently read, actually incentivizes employers to immediately terminate any employee who invokes their rights under § 207(r) before the employee can complain and gain protection under § 215(a)(3) and thus lost wages under § 216(b).

(Id. at 7, 8 (emphases in original).)

7

Moreover, in this case, Plaintiff argues that she is in fact claiming unpaid minimum wages — the money she did not earn because she was terminated.  Relying on <u>Lico v. TD Bank</u>, No 14-CV-4729 (JFB) (AKT), 2015 WL 3467159, at *3 (E.D.N.Y. June 1, 2015), in which a mother was forced to miss scheduled work time to travel home to express breast milk, Plaintiff likewise claims that she lost wages based on Defendants' promises regarding scheduling. (Pl.'s Opp'n 12, ECF No. 16-1 ("As such, this Plaintiff is not unlike the Plaintiff in <u>Lico</u> in that she was, at the time, employed by the employer, promised a certain schedule, and due to the employer's refusal to comply with      § 207(r), Plaintiff was unable to earn the money she was scheduled to earn and would have <u>but for</u> the employers' unlawful acts." (emphasis in original).) In particular, Plaintiff notes that, when she was terminated, she "was formally scheduled for the shift [on] Tuesday, February 17, 2015 but was deprived of working the already-scheduled shift based on the employer['₎s refusal to comply with § 207(r)."  (<u>Id.</u>)

Plaintiff also relies on <u>Valerio v. Putnam Assocs. Inc.</u>, 173 F.3d 35 (1st Cir. 1999), to argue that the Court should interpret the language of the FLSA broadly — in this case, that "unpaid minimum wages" includes future wages not earned because the employee was terminated. <u>Valerio</u> considered what the phrase "filed any complaint" meant in the FLSA's retaliation provision.  <u>Id.</u> at 41.  The Court there found that "any complaint" could include an

8

internal complaint, reasoning that deciding otherwise would have the "bizarre effect" of "creating an incentive for the employer to fire an employee as soon as possible after learning the employee believed he was being treated illegally." Id. at 41, 43. According to Plaintiff, "[t]he exact same logic applies to the construing [of] unpaid minimum wages to include 'lost wages' and 'equitable relief' for employees terminated [] as soon as the employer learns the employee will be requesting accommodation under § 207(r)." (Pl.'s Opp'n 15, ECF No. 16-1.)

Defendants counter with Hicks, in which the District Court for the Northern District of Alabama held that lost wages due to a demotion that was, at least in part, based on the defendant's failure to provide reasonable breaks and a place to express breast milk, were not recoverable under Section 207(r). (Defs.' Mot. to Dismiss 8, ECF No. 14); see Hicks, 2015 WL 6123209, at *28-29. The court in Hicks noted that "it does not appear that the statute prohibits or provides a remedy for an allegedly wrongful termination related to breastfeeding; rather, by its express terms, it remedies only the employer's failure to provide unpaid break time for breastfeeding during actual employment." Hicks, 2015 WL 6123209, at *29. In a footnote, the court "acknowledge[d] the absurdity of this conclusion" in that "[a]n employer faced with a request to allow an employee to take breaks to breastfeed may simply fire the employee rather than attempt to accommodate

9

the request for breaks," yet concluded "[n]evertheless, [that] the language in § 207(r)(1) and § 216(b) is clear.  Break time and a nursing room are all that is required under the FLSA, and even if those are denied, the only remedy is for unpaid minimum wage or overtime pay."  Id. at *29 n.14.  The court added that "[o]f course, protection against such a termination may be found under the Pregnancy Discrimination Act ["PDA"] . . . which provides a much broader and more robust remedy."  Id.

The case law and guidance from DOL make clear that the only remedy for a violation of Section 207(r) is for unpaid minimum or overtime wages.  The only question to decide, therefore, is whether the hours that were allegedly scheduled, but not worked because of Plaintiff's termination, count as "unpaid minimum wages."  Based on the reasoning in Hicks and the plain language of the statute, the Court finds that they do not.  While the Court is sympathetic to Plaintiff's argument that this renders Section 207(r) ineffective, there is no support from the case law or DOL for extending "unpaid minimum wages" to wages that would have been earned but for a termination.  Instead, a remedy for unlawful termination can be found under state and federal anti-discrimination laws, as explained below.

B. 29 U.S.C. § 215(a)(3) (FLSA provision covering retaliation)

Section 215(a)(3) of the FLSA prohibits retaliation against employees who exercise their rights under the Act, providing that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint. . . ." 29 U.S.C. § 215(a)(3). To establish a prima facie claim of retaliatory termination, a plaintiff "must demonstrate his engagement in statutorily protected activity, the fact of his dismissal, and a causal connection between the former and the latter." Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Cir. 2002). In Kasten v. Saint-Gobain Performance Plastics Corp., the U.S. Supreme Court construed the phrase "filed any complaint" to include oral complaints. 563 U.S. 1, 14 (2011). However, "not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer." Valerio, 173 F.3d at 44. To qualify for protection, the complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Kasten, 563 U.S. at 14.

Defendants' primary argument is that Plaintiff has not pled that she ever "put [Defendants] on notice that [she] was asserting her statutory rights." (Defs.' Mot. to Dismiss 9, ECF No. 14.)

11

They further contend that there was no violation of the statute as both options Plaintiff was provided — Joseph's office and the conference room — were sufficient.

Plaintiff identifies two separate complaints. (See Pl.'s Opp'n 18-19, ECF No. 16-1.)  She first complained to Brenda that the bathroom would be unsuitable for expressing breast milk. (Id. at 18.)  Plaintiff posits that "[r]ejecting the bathroom location was the initial act that set in motion the immediate retaliation." (Id. (emphasis in original).)  Plaintiff next alleges that she complained to the Dispatcher, who was the night shift supervisor, during her second shift that the room that had been provided for her to express breast milk — which she had been told was the only room available — was inadequate because it was not sufficiently private.

Ultimately, the Court finds that Plaintiff has — at this stage — pled sufficient facts to create a plausible claim for retaliation.  Whether the complaints she alleges are sufficiently clear to put Defendants on notice of her claims will be a question of fact for down the road.  According to Plaintiff, Defendants at first seemed pleased to hire her because it was difficult to find employees who wanted to take the night shift.  However, as soon as she requested breaks for expressing breast milk and rejected the bathroom option, their tone allegedly changed.  From that point forward, they refused to give her a schedule, did not schedule her

12

for necessary training, and fired her after two shifts, purportedly because they had received complaints about rude comments she had made.  However, when she asked what the comments were, they refused to tell her.  Finally, when she was paid, it was with a business, rather than payroll, check, which Plaintiff suggests means they had never intended to keep her on staff once she made her request. With respect to the sufficiency of the room provided under Section 207(r), that is also a question for a later date.  Based on what Plaintiff described, she states a plausible claim that it was not "private" and "free from intrusion."

   C.   FLSA Violations against Individual Defendants

   Defendants further argue that, even if the FLSA claims go forward, they should be dismissed against the individual defendants — Joseph, Brenda, Jacqueline, and Martin — because Plaintiff has not adequately alleged that they were her "employer" under the FLSA.  Defendants contend that Plaintiff's allegations that "upon information and belief," the four individual defendants are each an "owner, co-owner, and/or senior leadership" are mere "labels and conclusions" that do not pass muster under Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  (Defs.' Mot. to Dismiss 12, ECF No. 14.) However, they present no authority holding that these types of allegations cannot be made on information and belief.  The only case they do cite found that a "senior employee" who was neither

13

a "high-level corporate officer" nor had an ownership interest in the company was not an employer under the FLSA.  See Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 50 (1st Cir. 2013).  Here, by contrast, Plaintiff has alleged that all four individual defendants not only had an ownership interest, but ran the day-to-day operations of the business.  Thus, this case is different from this Court's recent decision in Levi v. Gulliver's Tavern Inc., where it was unclear whether the defendants were merely absentee owners with little or no day-to-day involvement.  No. CV 15-216 S, 2016 WL 552469, at *2-3 (D.R.I. Feb. 10, 2016). Accordingly, the Court denies Defendants' request to dismiss the FLSA claims against the individual defendants.

   D.   Sex Discrimination under Title VII, RICRA, and FEPA

      1. Discriminatory Discharge

   Title VII, RICRA, and FEPA all prohibit employers from taking an adverse employment action against an employee on the basis of the individual's sex, including on the basis of pregnancy, childbirth, or related medical conditions.  42 U.S.C.A. § 2000e-2, 2000e(k); R.I. Gen. Laws § 28-5-6, § 28-5-7(1)(i),(ii), § 28-5-7.4(b)(2), § 42-112-1(a).  A threshold question is therefore whether lactation is a "related medical condition[]" to pregnancy. FEPA explicitly states that "'[r]elated conditions' includes, but is not limited to, lactation or the need to express breast milk

14

for a nursing child." R.I. Gen. Laws § 28-5-7.4(b)(2). However, under Title VII and RICRA, the answer is less clear.

Defendants claim that "[a] majority of courts have declined to afford protected status to women by virtue of their status as nursing mothers, finding that lactation is a child care choice rather than a medical condition experienced by the mother." (Defs.' Mot. to Dismiss 13, ECF No. 14 (emphasis in original).) However, they cite only one case in support of this broad proposition — Falk v. City of Glendale, No. 12-CV-00925-JLK, 2012 WL 2390556 (D. Colo. June 25, 2012). Defendants acknowledge that the Fifth Circuit recently held that a woman's status as a lactating mother is afforded protected status under Title VII, see EEOC v. Houston Funding II, Ltd., 717 F.3d 425, 428 (5th Cir. 2013), but characterize it as a "minority decision." (Defs.' Mot. to Dismiss 13, ECF No. 14.)

As Plaintiffs point out, however, the trend post-Houston Funding — including Hicks, on which Defendants rely heavily for their FLSA arguments — has been to follow the Fifth Circuit's reasoning and hold that lactation is a "condition related to pregnancy" under the PDA. See, e.g., Allen-Brown v. D.C., No. CV 13-1341 (RDM), 2016 WL 1273176, at *11 (D.D.C. Mar. 31, 2016) ("Although the D.C. Circuit has yet to address this question, the Court finds the Fifth Circuit's analysis in [Houston Funding] persuasive."); Hicks, 2015 WL 6123209, at *19 ("The court agrees

15

that lactating is a medical condition related to pregnancy and childbirth, and that a lactating employee may not be treated differently in the workplace from other employees with similar abilities to work.  Thus, a female employee may not be discharged or otherwise disciplined simply because she is lactating."); EEOC v. Vamco Sheet Metals, Inc., No. 13 CIV. 6088 JPO, 2014 WL 2619812, at *6 (S.D.N.Y. June 5, 2014) (finding that allegations that the plaintiff "was harassed for taking lactation breaks and eventually terminated . . . may be able to state a claim for disparate treatment under Title VII"); Martin v. Cannon Bus. Sols., Inc., No. 11-CV-02565, 2013 WL 4838913 at *8 (D. Colo. Sept. 10, 2013) ("[T]he Court agrees with a recent decision of the Fifth Circuit in which it held that 'discriminating against a woman who is lactating or expressing breast milk violates Title VII and the PDA.'" (quoting Houston Funding, 717 F.3d at 430)).

Falk — which was decided before Houston Funding — is also distinguishable.  There, Plaintiff asserted that her "desire to 'continue to breast feed her infant daughter' formed the basis for the alleged discrimination," rather than claiming that lactation was a medical condition related to pregnancy.  Falk, 2012 WL 2390556, at *3.  Indeed, the court acknowledged that "a plaintiff could potentially succeed on a claim if she alleged and was able to prove that lactation was a medical condition related to pregnancy, and that this condition, and not a desire to breastfeed,

16

was the reason for the discriminatory action(s) that she suffered."

Id.  Moreover, in Falk, the plaintiff also alleged that she had

not been provided restroom breaks before she got pregnant; thus,

the court found that this "appears to be a case about workplace

conditions, and not about discrimination."  Id. at *4.

Moreover, EEOC guidance issued in June 2015 states that

"lactation is a pregnancy related medical condition" and thus "less

favorable treatment of a lactating employee may raise an inference

of unlawful discrimination."  EEOC Enforcement Guidance for

Pregnancy Discrimination and Related Issues, June 25, 2015

§         (I)(A)(4)(b),                available            at

http://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm.

Absent contrary guidance from the First Circuit, this Court

follows the Houston Funding decision and EEOC guidance, and finds

that lactation is a medical condition related to pregnancy, and

therefore covered under Title VII and RICRA.

To establish a prima facie case of discriminatory discharge,

a plaintiff must show:

> (1) she is a member of a protected class; (2) she was
> performing her job at a level that rules out the
> possibility that she was fired for inadequate job
> performance; (3) she suffered an adverse job action by
> her employer; and (4) her employer sought a replacement
> for her with roughly equivalent qualifications.

Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994).

Defendants argue that, even assuming Plaintiff is awarded protection as a lactating mother, she "does not (and cannot) allege that she was performing her position satisfactorily because she had only worked a total of two days before she was discharged and had never been evaluated by Professional Ambulance." (Defs.' Mot. to Dismiss 14, ECF No. 14 (emphasis in original).)   As Plaintiff points out, Defendants cite no authority for their assertion that a plaintiff cannot show satisfactory performance prior to a performance review.   (Pl.'s Opp'n 41-42, ECF No. 16-1.)   Indeed, if this were true, an employer would be free to fire employees for discriminatory reasons as long as they had not yet been formally evaluated.

Defendants further contend that Plaintiff has pled insufficient facts to make any causal link between her status as a lactating mother and her termination.   The Court disagrees. Reading the Complaint in the light most favorable to Plaintiff – as required at this stage - a reasonable inference can be drawn that her termination was based on her lactation requests.   As an initial matter, the First Circuit has held that close temporal proximity is sufficient to show causation at the prima facie stage. See, e.g., Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("The facts demonstrate sufficient temporal proximity between the protected conduct and the employment action in this case to make out a prima facie case.").   Here, Plaintiff

18

was fired several days after her allegedly protected activity. Furthermore, she pled that Brenda's tone changed completely when she made her initial request. Finally, while Defendants told Plaintiff that they had received complaints about her, when she asked what the complaints were, she was told "No you may not [ask]!" (Pl.'s Opp'n 44, ECF No. 16-1.) This is sufficient to get past a motion to dismiss.

### 2. Failure to Accommodate under FEPA

FEPA contains an affirmative obligation to "reasonably accommodate an employee's or prospective employee's . . . need to express breast milk for a nursing child, if she so requests, unless the employer can demonstrate that the accommodation would pose an undue hardship on the employer's program, enterprise, or business." R.I. Gen. Law § 28-5-7.4(a)(1).[3] Here, Defendants claim that they did reasonably accommodate Plaintiff. (See Defs.' Opp'n to Pl.'s Mot. to Amend 5, ECF No. 23-1 ("Plaintiff has not alleged, much less established that Defendants ever refused to

---

[3]   Title VII, by contrast, contains no such affirmative obligation. See, e.g., EEOC v. Houston Funding II, Ltd., 717 F.3d 425, 430 (5th Cir. 2013), ("[N]othing in this opinion should be interpreted as precluding an employer's defense that it fired an employee because that employee demanded accommodations."); Hicks v. City of Tuscaloosa, No. 7:13-CV-02063-TMP, 2015 WL 6123209, at *20 (N.D. Ala. Oct. 19, 2015) ("[U]nder the PDA, an employer is not required to treat breastfeeding or lactating employees better tha[n] it would treat non-lactating employees under similar circumstances, as long as it does not treat them worse." (emphasis in original)).

provide Plaintiff with a reasonable accommodation to express breast milk.  On the contrary, the Third Amended Complaint alleges that Plaintiff was actually provided two separate locations in which to express breast milk – Joseph Baginski's office and a conference room with a lock.").)  Whether the offer of Joseph's office, which Plaintiff alleges had "only a flimsy window covering" (Third Am. Compl. ¶ 37, ECF No. 25) and the conference room, which Plaintiff claims was "extremely cold with no heat in the middle of the cold February weather" (id. ¶ 61), were reasonable accommodations is a question of fact for a later date.  At this stage, Plaintiff has stated a plausible claim.

### 3. Hostile Work Environment

To state a hostile work environment claim, a plaintiff must demonstrate: "(1) membership in a protected class and (2) unwelcome sexual harassment, (3) which was based on sex, (4) was sufficiently severe or pervasive, (5) was objectively and subjectively offensive, and finally (6) that some basis for employer liability has been established." Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 17 (1st Cir. 2013).  Whether an allegedly hostile work environment is sufficiently severe or pervasive is a question of fact.  See Gorski v. New Hampshire Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002) ("Subject to some policing at the outer bounds, [the hostile work environment] question is commonly one of degree

- both as to severity and pervasiveness - to be resolved by the trier of fact . . . .").

The crux of Plaintiff's hostile work environment claim is that while she was in Joseph's office pumping breast milk, she could hear her male coworkers laughing and making comments, including something about "tits" or "boobs." Plaintiff also alleges that the environment as a whole seemed "sexist," that "women were degraded as compared to men," and that Joseph Baginski made it known that he thought female EMTs were not equal to men because they were not as "strong." (Third Am. Compl. ¶¶ 44-46, ECF No. 25.) She further claims that the refusal to give her a schedule and training added to the hostile work environment. Finally, Plaintiff notes that the fact that all of this activity occurred over only two shifts bolsters her claim that the environment was pervasive.

Defendants argue that "[o]ther than [Plaintiff]'s single allegation that she 'believed' she heard a comment about 'boobs,' [Plaintiff] does not allege conduct that is objectively offensive or directed at her sex. A discussion of pumping breast milk is neither 'harassment' nor is it directed at 'sex.'" (Defs.' Mot. to Dismiss 19, ECF No. 14.) They also claim that "a one-time incident on her first day of work, [is] insufficiently severe or pervasive to be actionable." (Id.) They do not, however, cite any cases in support of their contention that these comments are

21

insufficient to survive a motion to dismiss a hostile work environment claim.

Although somewhat of close call, the Court finds that based facts pled in the Complaint, Plaintiff's claim that the environment was hostile is plausible.  First, harassment based on pregnancy is covered under Title VII.  See Gorski, 290 F.3d at 473-74 (denying motion to dismiss hostile work environment claim based on "derogatory comments about [Plaintiff's] pregnancy so as to give rise to a sexually hostile working environment").  Because this Court finds that lactation is a medical condition related to pregnancy, the alleged comments about Plaintiff's pumping could contribute to a hostile work environment.

Second, while Defendants are correct that, in general, one incident is insufficient to support a hostile work environment claim, because of Plaintiff's very short tenure in this case, the Court declines to find as a matter of law that the conduct alleged in the Complaint was not severe and pervasive given the amount of time she worked there.  It is important to keep in mind that this is a motion to dismiss, not summary judgment.  See id. at 472, 474 ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits . . . . It is not necessary at this point to decide whether

22

the plaintiff could sustain a hostile work environment claim if the factual evidence she could marshal at trial were limited to the facts alleged in the amended complaint." (emphasis in original)).   Depending on what discovery yields, this claim may ultimately not survive, but that is question for another day.

E.   Disability Discrimination under the ADA, RICRA, and FEPA

To establish a prima facie case of disability discrimination, Plaintiff must prove the following three elements:

> (1) that she was disabled within the meaning of the [relevant statute];
> (2) that she was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and
> (3) that she was discharged or adversely affected because of the disability.

Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 82 (1st Cir. 2008); DeCamp, 875 A.2d at 25.   In 2008, Congress broadened the definition of a disability under the ADA.   A disability is now defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." Lang v. Wal-Mart Stores E., L.P., No. 13-CV-349-LM, 2015 WL 1523094, at *2 (D.N.H. Apr. 3, 2015) (quoting 42 U.S.C. § 12102(1)(C)).   FEPA and RICRA likewise "define disability to include 'any physical or mental impairment which substantially limits one or more major life activities.'"   Poulin v. Custom Craft, Inc., 996 A.2d 654, 657 (R.I. 2010) (quoting G.L.1956 § 42-112-1; G.L.1956 § 28-5-6(4)(ii)).

Courts have generally held that normal pregnancy and post-pregnancy do not qualify as a disability. See, e.g., Lang, 2015 WL 1523094, at *2 ("ADA cases decided after the effective date of the ADAAA [2008 Amendment], [] generally hold that pregnancy is not an actionable disability, unless it is accompanied by a pregnancy-related complication." (emphasis in original)); Annobil v. Worcester Skilled Care Ctr., Inc., No. CIV.A. 11-40131-TSH, 2014 WL 4657295, at *11 (D. Mass. Sept. 10, 2014) ("Being pregnant, in and of itself, is not a handicap."); Dantuono v. Davis Vision, Inc., No. 07-CV-2234 TCP ETB, 2009 WL 5196151, at *4 (E.D.N.Y. Dec. 29, 2009) ("Only in rare cases — where there are pregnancy complications — has pregnancy been held to be a disability under the ADA."). Plaintiff argues that the cases Defendants cite are non-binding and some were decided prior to the 2008 amendment; however, she does not point to any cases post-2008 amendment holding that normal lactation is a disability.

Plaintiff alternatively tries to get around the case law by arguing that she has also pled "lactation dysfunction." (Pl.'s Opp'n 32, ECF No. 16-1.) As Defendants note in their Reply, this was not pled in the Complaint, which merely stated that "she had been struggling to keep her breast milk supply up," but had been able to "maintain her supply." (Defs.' Reply 9, ECF No. 17 (quoting 2nd Am. Compl. ¶ 81).) Nor does Plaintiff explain how the alleged "lactation dysfunction" meets the definition of a

disability under the ADA.  Accordingly, Plaintiff's disability discrimination claims are dismissed.

III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' Motion is GRANTED with respect to Count One (Violation of Section 207(r) of the FLSA), and Counts Five, Six, and Ten (Disability Discrimination in Violation of the ADA, RICRA, and FEPA); it is DENIED with respect to the remainder of Plaintiff's counts.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date:  September 30, 2016